**No. 22-10838**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Audrey Brannon,

*Plaintiff-Appellant*,

v.

Secretary, Department of Veterans Affairs,

*Defendant-Appellee* .

Appeal from the United States District Court for the Southern
District of Georgia

No. 1:20-cv-00182-JRH-BKE

_____

## APPELLANT'S OPENING BRIEF

_____

Georgia Lawrence
GA State Bar No. 270123
Southworth PC
1100 Peachtree ST NE, Suite 200
Atlanta, GA 30309
Phone: 404-585-8095
Fax: 404-393-4129
Email: georgia@southworthpc.com

*Attorneys for Appellant*
Audrey Brannon

_____

**No. 22-10838**
**Brannon vs. VA Secretary**

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

I hereby disclosure the following pursuant to this Court's interested persons

rule:

Brannon, Audrey, Appellant

Davids, Justin G., Assistant United States Attorney

Estes, David H., United States Attorney

Epps, Hon. Brian K., United States Magistrate Judge

Hall, Hon. J. Randal, Chief United States District Judge

Lawrence, Georgia , Attorney for Appellant

Leithart, Otto Woelke, Assistant United States Attorney

Loflin, Sheri McDonough, Denis, Secretary of the Department of VA / Appellee

## Statement Regarding Oral Argument

Appellant's counsel believes oral argument would be helpful. Several issues appear not to have been decided in the federal sector context. The resolution of such would have applicability in most cases involving federal employees.

# Table Of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement.................. C-1

Statement Regarding Oral Argument........................................................................ i

Table of Contents .................................................................................................... ii

Table of Citations ................................................................................................... iii

Statement Regarding Adoption ................................................................................v

Jurisdictional Statement ........................................................................................ vi

Statement of the Issues...........................................................................................1

Statement of the Case..............................................................................................2

Summary of the Argument .....................................................................................10

Argument................................................................................................................12

    I.     Whether Appellant asserted actionable harassment and/or hostile work environment claims ................................................................................12

Conclusion..............................................................................................................21

Certificate Of Compliance .....................................................................................22

# Table of Citations

**Cases**                                                             **Page(s)**

\* \* \* *Alline, Complainant, EEOC DOC 0120181832,*
2018 WL 4358836 (Aug. 9, 2018) .............................................. 20

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) .................................................................12

*Babb v. Wilkie,*
140 S. Ct. 1168 (2020) .............................................................. 13 - 16

*Babb v. Wilkie,*
992 F.3d 1193 (11th Cir. 2021) ...........................................................13,14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 558 (2007) ...................................................... 12

*Carter v. Dejoy*
No. 5:19-CV-207 (MTT), 2021 WL 4302835, (M.D. Ga. Sept. 21,
2021)....................................................................................16

*Cleveland v. Sec'y of Treasury,*
407 F. App'x 386, 388 (11th Cir. 2011) ..................................... 12

*Covarrubius vs. SSA,*
113 MSPR 583 (2010)................................................................ 12

*Crystal Cook, Complainant, EEOC DOC 0120122032,*
EEOC DOC 0120122032, 2012 WL 4753599 (Sept. 24, 2012).......20

*Hausberg v. Wilkie,*
No. 8:20-CV-2300-TPB-JSS, 2021 WL 4133739 (M.D. Fla. Sept. 10,
2021)........................................................................... 17

*Leib v. Hillsborough County Pub. Transp. Comm'n,*
558 F.3d 1301, 1305 (11th Cir.2009)................................................ 9

*Nat'l R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002) ...................................................... 21

*Ng v. Brennan,*
No. 8:17-cv-509-T-36AEP, 2019 WL 2436581, (M.D. Fla. June 11,
2019)........................................................................... 17

*Sly v. Sec'y, Dep't of Veterans Affs.*,
　　No. 8:17-CV-1868-AAS, 2022 WL 1203210 (M.D. Fla. Apr. 22, 2022)
　　........................................................................................... 17

*Swierkiewicz v. Sorema N.A.*,
　　534 U.S. 506, 514 (2002) ........................................... 12, 18

*Turnage v. Wormuth*,
　　No. 5:18-CV-02127-CLS, 2022 WL 993550 (N.D. Ala. Apr. 1, 2022)
　　.........................................................................................13

## Statutes

5 U.S.C. § 2302................................................................ 15,16,
　.................................................................................... 19, 20

29 U.S.C. § 633a ........................................................... 13, 14

29 U.S.C. § 701................................................................13

42 U.S.C. § 2000e ............................................................15

42 U.S.C. § 2000e-16 .......................................................15

## Jurisdictional Statement[2]

This is a direct appeal from a final judgement of the United States District Court from the Southern District of Georgia dismissing Appellant's claims. This court has jurisdiction pursuant to 28 U.S.C Sec. 1291.

---

## Statement of the Issue(s)

I.     Whether Appellant asserted actionable harassment and/or hostile work

environment claims

**Statement of the Case**

Appellant, Audrey Brannon, initiated this action against the Secretary of Veterans Affairs on December 14, 2020. (Dkt. 1.) Appellant filed her Amended Complaint on March 3, 2021. (Dkt 17.). The Amended Complaint asserted five counts: Count I: Violation of the Rehabilitation Act – Harassment, Count II: Violation of the Rehabilitation Act – Retaliatory Harassment, Count III: Violation of Title VII – Race Harassment, Count IV: Violation of the Title VII Act – Retaliatory Harassment; Count V: Violation of Title VII – Disparate treatment (race and protected activity); Count VI: Violation of Rehabilitation Act – Disparate treatment (Appellant erroneously labeled this as a second Count V in the Amended Complaint). (Dkt. 1.)

**STATEMENT OF PROCEEDINGS AND**

**DISPOSITION IN THE COURT BELOW**

On December 14, 2020, Appellant filed a Complaint. (Dkt. 1.) On February 22, 2021, Apellee filed Motion to Dismiss. (Dkt. 6.) On March 9, 2021, Appellant filed an Amended Complaint. (Dkt. 18). On March 22, 2021, Appellee filed a Motion to Dismiss Amended Complaint. (Dkt. 19.) On April 5, 2021, Appellant filed a Brief in Opposition to Motion to Dismiss Amended Complaint. (Dkt. 20). On April 6, 2021, Appellee filed a Notice of Intent to Reply. (Dkt. 21.) On April 16, 2021, Appellee filed a Response in Support of

2

its Motion to Dismiss. (Dkt. 22.) On July 8, 2021, the Court entered an Order

finding Appellee's February 22, 2021, Motion to Dismiss as moot. (Dkt. 23.)

On January 18, 2022, the Court entered an Order Granting Appellee's March

22, 2021, Motion to Dismiss. (Dkt. 31.). On January 19, 2022, the Court

entered Judgment. (Dkt. 32.). On March 16, 2022, Appellant filed her Notice of

Appeal. (Dkt. 33.) This appeal follows.

## STATEMENT OF FACTS

As the District Court noted, "Plaintiff is an African American woman

formerly employed as a social worker, GS-11, and registered dietician at the

Charlie Norwood Veterans Affairs Medical Center in Augusta, Georgia. (Doc.

18, ¶¶ 7-10.) Through this action, she sues her former employer, the Secretary

of the Department of Veterans Affairs, for six alleged violations of federal law.

(Id. ¶¶ 99-134.) The six counts are: (1) violation of the Rehabilitation Act of

1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act") - harassment; (2) violation

of the Rehabilitation Act - retaliatory harassment; (3) violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") - race

harassment; (4) violation of Title VII - retaliatory harassment; (5) violation of

Title VII - disparate treatment; and (6) violation of the Rehabilitation Act -

disparate treatment. (Id.)" (Dkt. 31 at p. 1 and 2.)

Specifically, Plaintiff incorporated all the facts of her Amended Complaint

3

and characterized the same as "harassment" that "was in context severe and pervasive;" "based on" protected characteristics; "unwelcome to Plaintiff;" there was a basis for liability and the "harassment caused Plaintiff damages for which Defendant is liable." (Dkt. 18 at ¶¶ 99-134).

Appellant noted "This action seeks actual damages, declaratory, injunctive and equitable relief, compensatory damages, costs and another relief deemed appropriate by this Court for the race discrimination, disability discrimination, reprisal and hostile work environment suffered by Plaintiff, Audrey Brannon ("Ms. Brannon") in her treatment by Defendant." (Dkt. 18 at ¶ 1.).

As the District Court noted, "Plaintiff alleges she was placed on a performance improvement plan ('PIP') in or around December 2015, Defendant's issuance of which was 'contrary to [her employer's] policies' and her regularly outstanding performance reviews. (Id. ¶¶ 18, 64, 68, 78, 79.) Plaintiff claims her placement on the PIP 'was pretextual because in fact there were no performance issues." (Id. ¶ 77.) Plaintiff also claims her performance in the PIP 'was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity.' (Id. ¶ 80.)." (Dkt. 31 at p. 2.)

Appellant also alleged there was no one-on-one counseling of her prior to the placement on the PIP, and moreover, "there was no other warning or

indication of any type of concern." (Dkt. 18 at ¶ 71). It was overheard around this time that Loflin, Plaintiff's first line supervisor who issued the PIP to Plaintiff was told "you've got to come up with something better than this if you want to get rid of her." (Dkt. 18 at ¶ 13, 68, 74, 75, and 76.) To allow the PIP to go forward, the Agency had to "unclose" a prior rating. (Dkt. 18 at ¶ 82).

Appellant also alleged the PIP was unwelcome and would have been unwelcome to a reasonable person in Plaintiff's position. (Dkt. 18 at ¶ 18). That was true especially true in context and combination of the other harassment. (Dkt. 18 at ¶ 20). Placement on a PIP was something that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity, especially and context and combination of the rest of the actions. (Dkt. 18 at ¶¶ 25, 27, and 28 ("Denial of overtime opportunities, notice of a proposed removal, placement on a performance improvement plan, and denial of participation on an EEO committee was in combination severe and/or pervasive harassment and Plaintiff believed these things in combination were severe and/or pervasive harassment."). Likewise, Appellant effectively stated these events "would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity." (See Dkt. 18 at ¶¶ 15-21.)

As the District Court notes, "Plaintiff points to her proposed removal in November 2016 (Id. ¶ 17.) She claims this proposed removal 'was excessive' that her 'performance in the proposed removal was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity,' that her supervisor 'cherry[-] picked unsupportable data to justify career termination and create a false narrative,' and that 'the proposed removal was based on a falsity. (Id. ¶ 85-89.).'" (Dkt. 31 at pp. 2-3.)

Appellant also alleged the proposed removal was based on the PIP. (Dkt. 18 at ¶ 84). Appellant was placed on the PIP by Loflin and then issued a proposed removal by Loflin, allegedly based on the failure to maintain the standards of the PIP, but this was false. (Dkt. 18 at ¶¶ 91 to 93).

Loflin's proposed removal of Plaintiff was rejected by the Agency. (Id. at ¶ 91).

Appellant alleges she engaged in protected activity when "she refused to falsely testify as Loflin requested." (Dkt. 18 at ¶ 11). Loflin was white. (Dkt. 18 at ¶ 31). Plaintiff, black, alleges, "Another Black registered dietician under Sheri Loflin's supervision was wrongly fired by Loflin. Loflin asked Plaintiff, a black RD to testify [falsely] against this black registered dietitian. Upon information and belief, Loflin did this because of Plaintiff's race and to cover Loflin's racial

6

discrimination. That situation shows racial discrimination in this case. Loflin came to Plaintiff's office, which is in a separate building from S. Loflin. Plaintiff's office was also next door to Josephine Gardner Rogers. Josephine, a black RD under Loflin's supervision, was scheduled for an employment Hearing/Court on the third floor at the Augusta VA Hospital, where they all worked. Loflin closed Plaintiff's office door and asked Plaintiff to please testify against Josephine that there were work deficiencies. Loflin led Plaintiff in what to say against Ms. Rogers, in preparation for the hearing. Plaintiff explained to Loflin that she was not aware of any inadequacies of Josephine's work, therefore she could not lie for her against Josephine, as Loflin was leading Plaintiff to do. … Plaintiff believes this was done because of Plaintiff's race. Plaintiff's [refusal] to lie was oppositional protected activity. Plaintiff was effectively asked to use her status as an African American to help cover up Loflin's wrongful removal of an African American female. Plaintiff refused to be led. Loflin tried to remove two of three African Americans who she has supervised in the past relevant time frame, but, upon information and belief, treated similarly situated white supervisees more favorably." (Dkt. 18 at ¶¶ 31 to 46).

As the District Court notes, "Plaintiff claims she was denied 'participation on an [Equal Employment Opportunity ("EEO") committee in or around April 2017.' (Id. ¶ 16.) Plaintiff requested to participate in the 'April 2017 Annual

Black History Special Emphasis Program held at their VA,' which would have taken approximately one or two hours. (Id. ¶ 47-48.) However, Plaintiff was denied this opportunity because of Plaintiff's race and disability. (Id.<JI<JI 51-52, 55, 59.)" (Dkt. 31 at p. 3).

Appellant alleges that Loflin and another denied Appellant just a few hours for the black history committee without justification, and "[s]howing mendacity and that the action was based on Plaintiff's race, Loflin now denies that Plaintiff was denied participation in the Black Employment EEO committee." (Dkt. 18 at ¶¶ 51 to 53).

Appellant contacted an EEO counselor in this case in April 2017. (Dkt. 18 at p. 4.)

Plaintiff alleged that in July 2017 she was denied the opportunity for weekend rotational shifts which was unwelcome and a reasonable person would have found unwelcome. (Dkt. 18 at ¶15).

The District Court asserts, "in the EEO complaint Plaintiff submitted with her original complaint, Plaintiff alleges she was not "allowed to work her required weekend rotation" beginning in December 2015. (Doc. 1-1, at 5.)" (Dkt. 31 at p. 3).

As the District Court properly and actually looked to that document, Appellant now notes, from that same document, the record shows in the Formal

8

Complaint, leading to this Case, Appellant stated "Ms. Loflin has established a now hostile work environment toward me." (Dkt 1-1 at p. 2). Appellant stated "[m]y supervisor determined to determine to get rid of me as she did another black RD (Josephine Rogers) years prior." (Dkt 1-1 at p. 4).

The Eleventh Circuit reviews review de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Leib v. Hillsborough County Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir.2009).

## Summary of the Argument

The District Court dismissed Appellant's claims as time barred stating Plaintiff did not assert a hostile work environment in her Amended Complaint. (Dkt. 31 at p. 7.) However, she did, including the timely events of being denied participation on the EEO committee related to black history.

The first paragraph of the Amended Complainant made clear Appellant sought relief for a hostile work environment. (Dkt. 18 at ¶ 1.) Also, her Formal Complaint, which the District Court looked at, stated the events were creating a hostile work environment. (Dkt. 1-1 at p. 2.) Moreover, the pleading separated out counts of "harassment" with assertions that were sufficient to show Appellant was asserting hostile work environment claims. (Dkt. 18 at ¶¶ 99 -134). No magic wording is required, especially given such words appear nowhere in the plain language of the relevant statues. The facts of Amended Complaint also show facts sufficient to show hostile work environment claims. (Dkt. 18 at ¶¶ 1 -134).

Any reading to the contrary seems strained and an attempt to make up an interpretation when no such special words are needed and the context of Amended Complaint shows allegations of an overall hostile work environment. (Dkt. 18 at ¶¶ 1 -134).

The District Court, without analysis, also asserts even if Appellant had intended to bring hostile work environment claims "the factual allegations raised

by Plaintiff would still be insufficient…" (Dkt. 31 at p. 9). The District Court then cites language about what Appellant must plead that cites a case interpreting Title VII language in a different context—for non-federal employees. Either way, Appellant's facts are sufficient if true to establish hostile work environment claims.

Appellant withdraws Counts V and VI.

**Argument**

## A. Motion to Dismiss Standard

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. Id. at 556. To state a claim in an employment discrimination case, a plaintiff must allege facts to give the defendant "fair notice of the basis" for the plaintiff's claims. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002). "Rule 8(a)' s "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious clams." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (holding that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination)." *Cleveland v. Sec'y of Treasury*, 407 F. App'x 386, 388 (11th Cir. 2011).

**B. The District Court Wrongfully Determined that Appellant Did Not State a Hostile Work Environment Claim.**

The District Court did not provide analysis of the Amended Complaint on this point except for asserting that the phrase "hostile work environment" was only used once and that Appellant asserted claims for "harassment, retaliation, and discrimination," as if harassment as alleged was not a hostile work environment. (Dkt. 31 at 7-8). The District Court cites no legal authority that the phrase hostile work environment must be used, not was Appellant's counsel able to find any such authority. The United States Attorneys Office cited no such authority either.

Even if such existed, it would be contrary to the plain language of the statute and the Supreme Court's recent guidance on how to interpret the relevant statues. "As shall be seen… recent decisions of the Supreme Court and Eleventh Circuit have caused a shift away from that familiar framework in Title VII claims filed against federal governmental employers. *See, e.g., Babb v. Wilkie*, 140 S. Ct. 1168 (2020), and *Babb v. Secretary, Department of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021)." *Turnage v. Wormuth,* No. 5:18-CV-02127-CLS, 2022 WL 993550, at *5 (N.D. Ala. Apr. 1, 2022).

"'The plain meaning of the statutory text,' the [Supreme Court of the United States through Justice Samuel Alito] held, 'shows that age need not be a but-for cause of an employment decision in order for there to be a violation of § 633a(a)'

13

Id. at 1172. In so holding, the Court zeroed in on the key statutory language:

'[P]ersonnel actions ... shall be made free from any discrimination based on age ....'

29 U.S.C. § 633a(a).'" *Babb v. Sec'y, Dep't of Veterans Affs.,* 992 F.3d 1193, 1197

(11th Cir. 2021) (citing *Babb v. Wilkie,* 140 S. Ct. 1168, 1172 (2020)).

The Eleventh Circuit should zero in on the key statutory language in this case

too—"hostile work environment is not found in the statute" or definition of the

covered "personnel actions" as the Supreme Court of the United States has stated

Title VII (and the like) should be interpreted.

This, essentially, is the relevant language through which all claims eventually

must go: "All personnel actions affecting employees or applicants for employment

(except with regard to aliens employed outside the limits of the United States) in

military departments as defined in section 102 of Title 5, in executive agencies as

defined in section 105 of Title 5 (including employees and applicants for

employment who are paid from nonappropriated funds), in the United States Postal

Service and the Postal Regulatory Commission, in those units of the Government of

the District of Columbia having positions in the competitive service, and in those

units of the judicial branch of the Federal Government having positions in the

competitive service, in the Smithsonian Institution, and in the Government

Publishing Office, the Government Accountability Office, and the Library of

Congress shall be made free from any discrimination based on race, color, religion,

sex, or national origin." 42 U.S.C.A. § 2000e-16(a) (emphasis added).

"Personnel actions in the federal employment context 'include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews.' *Babb v. Wilkie,* 140 S. Ct. 1168, 1174 (2020) (citing 5 U.S.C. § 2302(a)(2)(A)).'" *Carter v. Dejoy,* No. 5:19-CV-207 (MTT), 2021 WL 4302835, at *5 (M.D. Ga. Sept. 21, 2021).

Under 5 U.S.C. § 2302, "'personnel action' means-- (i) an appointment; (ii) a promotion; (iii) an action under chapter 75 of this title or other disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi) a restoration; (vii) a reemployment; (viii) a performance evaluation under chapter 43 of this title or under title 38; (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph; (x) a decision to order psychiatric testing or examination; (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and (xii) any other significant change in duties, responsibilities, or working conditions; with respect to an employee in, or applicant for, a covered position in an agency, and in the case of an alleged prohibited personnel practice described in subsection (b)(8), an employee or applicant for employment in a Government corporation as defined in section 9101 of title 31.." 5

U.S.C.A. § 2302. Given the role of prohibited personnel practices, the Supreme Court's holding that personnel actions in Title VII is based on 5 U.S.C.A. § 2302 is reasonable, given the efficient administration of justice.

Thus, for federal employees, hostile work environments as imagined by legal practitioners in the past are now covered by the definition of personnel action though the scope of 5 USC 2302(a)(2)(A)(xii)—any other significant change in duties, responsibilities, or working conditions—which is broad. *See Covarrubias v. SSA,* 113 MSPR 583, 589, 2010 MSPB 90 (2010) (harassment or discriminatory working conditions; the legislative history of the 1994 amendment to the WPA indicates that the term "any other significant change in duties, responsibilities, or working conditions" should be interpreted broadly, to include "any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system."; reversed on other grounds). Although this might seem unfortunate, the plain language of the statute has been pointing in that direction since it was written.

Even if the Court determines, however, that there is no change through the definition of the plain meaning of personnel action, which would impose a different standard of what is hostile work environment for federal employees than for non-federal employees, it is not uncommon to hear the claims as imagined now referenced as "harassment" claims in summaries by courts. "'A plaintiff raising a

federal-sector Title VII retaliatory hostile work environment claim must now establish the harassment was of a kind that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan*, 955 F.3d at 861 (citing *Burlington Northern,* 548 U.S. at 68).'" *Sly v. Sec'y, Dep't of Veterans Affs.,* No. 8:17-CV-1868-AAS, 2022 WL 1203210, at *13 (M.D. Fla. Apr. 22, 2022).

Under that law, which does not seem to look at the plain language definition of "personnel action," "'to establish a hostile work environment claim, a plaintiff must show that "(1) he is a member of a protected group; (2) who has been subjected to unwelcome harassment; (3) based on a protected characteristic, (4) that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that his employer is vicariously or directly liable for the environment.' *Ng v. Brennan,* No. 8:17-cv-509-T-36AEP, 2019 WL 2436581, at *6 (M.D. Fla. June 11, 2019) (internal quotations omitted)." *Hausberg v. Wilkie,* No. 8:20-CV-2300-TPB-JSS, 2021 WL 4133739, at *3 (M.D. Fla. Sept. 10, 2021). None of the pleading requirements as stated there shows the term "hostile work environment" must be used, or how many times it must be used.

Moreover, if the argument, unexplained by the District Court, is that the pleading was not sufficient because "severe and pervasive" was not sufficiently

pled, this argument is contrary to *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002), which shows sufficient notice especially given the Formal Complaint and Amended Complaint states "hostile work environment" and Appellant asserts many of the other elements and states "there is a basis for imposing liability," and the many other provisions of the Amended Complaint which show it was the hostile work environment combined and in combination that was at issue. (Dkt. 18 ¶¶ 1 to 134).

Also, many of the items at issue – a performance improvement plan (PIP) that could lead to termination and is designed to change the working conditions but misused changes them in a very harassing way, and a proposed termination, which a step toward changing the conditions ultimately and any reasonable employee would find threatening and harassing, on their face are serious enough to be key items that could be easily misused to undermine the merit system and/or steps in the process, when illegally done, of an attempt to undermine the merit system, which itself is so key to federal employment—where employees via statute and for good reason, receive extra protection because we want the federal employees backing America to be evaluated under the merit system—so they can do the right things for the citizens the federal government serves. Likewise, they would dissuade a reasonable employee from engaging in protected activity. And also, especially in the federal context where there are additional employment rights and

expected long term careers, these times would be sufficient hostile and/or abusive. Appellant's counsel was not able to find any authority but believes this should be evaluated form the position of a reasonable federal employee and no just an average worker.

Additionally, Appellant refers to the statement of facts above, which show as to the harassment claims, Appellant alleged she was a member of protected classes, black, diabetic, and engaged in EEO activity; she was subjected to unwelcome harassment through, among other things, the PIP leading to the proposed removal which is abandoned, occurring shortly before the EEO committee participation denial; there is some evidence that shows it could be related to protected characteristics especially given the other evidence of pretext; these things would meet the standard under "personnel action" and also would create a hostile work environment; there is a basis for a liability because the harassment was through the supervisor.

The United States Attorneys Office and the District Court seem to think there were no "hostile work environment claims." The seem to be imposing an unspoken standard and missing many aspects of the Amended Complaint showing an intent to bring harassment and/or hostile work environment claims. Moreover, the type of harassment as explained above is serious and the type actionable.

Moreover, the claims are related and not isolated. The pretextual PIP leads to

the pretextual proposed removal, which is rejected, but then later Appellant is subjected to further harassment to include Committee denial, et cetera, because she is black and refused to lie for her white supervisor as her supervisor requested Appellant, black, do against another black employee, among other things.

Moreover, the District Court did not address Appellee's arguments between discrete and harassment events as if the two were mutually exclusive, which is denied. So that is not properly before the Eleventh Circuit. But, even if so, that is contrary to the plain language of personnel action and the purpose of the relevant statutes which would be thwarted by trying to claim discrete act somehow had to be excluded from hostile work environments and not included as background evidence of the hostile work environment. In any case, placement on a PIP and a proposed removal are all only covered by the relevant, according to the Supreme Court of the United States, "personnel action" definition of "other significant change in duties, responsibilities, or working conditions" and are not enough historically to make an employee aggrieved alone, according to the Equal Employment Opportunity Commission. See 5 U.S.C.A. § 2302; *Crystal Cook, Complainant*, EEOC DOC 0120122032, 2012 WL 4753599, at *2 (Sept. 24, 2012); See * * * *Alline, Complainant*, EEOC DOC 0120181832, 2018 WL 4358836, at *3 (Aug. 9, 2018).

Part of this harassment included the April 2017 denial which is the same month Appellant contacted a counselor in this case so the entire claim of

harassment is actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

(2002).

## Conclusion

For these reasons, Appellant respectfully request the district court's decision

be reversed as to claims I, II, II, and IV, and the case be sent back to the District

Court for trial or decision consistent with any opinion.


Date:  May 25, 2022

/s/ Georgia Lawrence

Georgia Lawrence
GA State Bar No. 270123
Southworth PC
1100 Peachtree ST NE, Suite 200
Atlanta, GA 30309
Phone: 404-585-8095
Fax: 404-393-4129
Email: georgia@southworthpc.com
 Attorneys for Appellant, Audrey Brannon

## Certificate Of Compliance

1. Type Volume

   This document complies with the word limit of FRAP 27 (d)(2)9a) because, excluding the parts exempted by FRAP 32 (f), this document contains 4198 words.

2. Type face and Type Style

   This document complies with the typeface requirements of FRAP 32 (a)(5) and the type-style requirements of FRAP 32 (a)(6).